

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

Chambers of

J. Mark Coulson

U.S. Magistrate Judge

101 West Lombard Street

Baltimore, Maryland 21201

MDD_JMCChambers@mdd.uscourts.gov

Phone: (410) 962-4953

Fax: (410) 962-2985

August 15, 2017

LETTER  TO ALL COUNSEL OF RECORD

Re: *Lowe  v. Colvin*
      Civil No. 16-cv-01335-JMC

Dear Counsel:

On May 4, 2016, Plaintiff, Mr. Clifton Lowe, petitioned this Court to review the Social Security Administration's final decision to deny his claim for Title II Disability Insurance Benefits ("DIB") and Title XVI Social Security Income Benefits ("SSI").  (ECF No. 1.)  I have considered the parties' cross motions for summary judgment, (ECF Nos. 16, 19), and I find that no hearing is necessary.  Loc. R. 105.6 (D. Md. 2016).  This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. 42 U.S.C. § 405(g); Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).  Under that standard, I will deny Mr. Lowe's motion, grant the Government's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405. This letter explains my rationale.

Mr. Lowe initially applied for DIB and SSI benefits on August 29, 2012, alleging a disability onset date of August 19, 2012. (Tr. 216-225). His application was initially denied on January 24, 2013, and then upon reconsideration it was denied again on July 25, 2013. (Tr. 105-113, 122-125).  On July 31, 2013, Ms. Greene requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 136-138). On December 16, 2014, a hearing was held before ALJ Francine Applewhite. (Tr. 135). On January 23, 2015, the ALJ denied Mr. Lowe's application, finding that he was not disabled within the meaning of

the Social Security Act during the relevant time frame. (Tr. 9-29). Mr. Lowe subsequently filed a timely request for review before the Appeals Council. (Tr. 7-8). However, the Appeals Council denied Mr. Lowe's request for review on March 7, 2016, making the ALJ's decision the final reviewable decision of the Agency. (Tr. 1).

In her decision to deny Mr. Lowe's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920 (1992). Pursuant to those regulations, the "ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past work, and (5) if not, whether he can perform other work." Hunter v. Sullivan, 993 F.2d 31, 34–35 (4th Cir. 1992) (internal citations omitted). "If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step. Through the fourth step, the burden of production and proof is on the claimant." Id. (internal citations omitted). If, however, the claimant reaches step five, then "the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." Id. (internal citations omitted).

In this case, the ALJ found at step one that Mr. Lowe met the insured requirements of the Social Security Act through September 30, 2012, and that he had not engaged in "substantial gainful activity" since August 19, 2012, the alleged onset date (Tr. 14). Next, at step two, the ALJ determined that Mr. Lowe's "left eye blindness" constituted a "severe impairment" under the regulations. (Tr. 14-15). At this step, the ALJ also discussed several other conditions, including Mr. Lowe's hypertension, diabetes, lumbar degenerative disc disease with radiculopathy, adjustment disorder with depressed mood and substance abuse, as well as the numbness he apparently experienced in his hands.[1] (Tr. 14-18). But the ALJ determined that there was no evidence that those impairments "impose more than minimal limitations on [Mr. Lowe's] ability to complete work–related activities," and therefore we considered non-severe. (Tr. 15).

At step three, the ALJ found that Mr. Lowe did not have an impairment, or a combination of impairments, that met or medically equaled any of the impairments listed set forth in 20 C.F.R Part 404, Subpart P, Appendix 1. (Tr. 18-22). At step four, the ALJ found that Mr. Lowe had the residual functional capacity (RFC) to: "perform a full range of work at all exertional levels, but with the following nonexertional limitations: limited to jobs allowing monocular vision, no climbing ladders, ropes, or scaffolds; no

---

[1] The ALJ also noted that there was no evidence of congestive heart failure or coronary heart disease.

exposure to hazards such as unprotected heights and moving machinery." (Tr. 19-22). Finally, at step five, after hearing testimony from the vocation expert ("VE"), the ALJ determined that Mr. Lowe could perform his past relevant work as a security guard and a laborer/stock clerk because, the ALJ explained, "[t]his work does not require the performance of work-related activities precluded by [Mr. Lowe's] residual functional capacity." (Tr. 22-24). Therefore, the ALJ concluded that Mr. Lowe "has not been under a disability, as defined in the Social Security Act, from August 19, 2012 through the date of this decision." (Tr. 24).

In his Motion for Summary Judgment, Mr. Lowe takes issue with the ALJ's findings in six ways, namely that: (1) "the ALJ failed to find [his] adjustment disorder with depressed mood to be a severe impairment at step 2 of sequential evaluation"; (2) "the ALJ failed to find any visual limitations as a result of [his] severe left-eye blindness"; (3) "the ALJ failed to find [his] degenerative disc disease of his lumbar spine to be a severe impairment at step 2 of sequential evaluation"; (4) "the ALJ erred by neglecting to evaluate the medical necessity of [his] hand-held device"; (5) "the ALJ never discussed the effects of [his] numerous pain medications on his ability to work"; and (6) "the ALJ's hypothetical to the VE was incomplete," and the "VE's testimony was inconsistent with the D.O.T.[2][,] and therefore, [should not have been] used to deny benefits at steps 4 and 5 of sequential evaluation." For ease of discussion, I have reorganized and consolidated these arguments such that I will address Mr. Lowe's first, third, fourth, and fifth arguments together in Part I, then I will address Mr. Lowe's second and sixth arguments together in Part II.

I.      ALJ's Assessment of the Severity of Mr. Lowe's Impairments

Mr. Lowe contends that the ALJ erred at step two of the sequential evaluation by failing to find that his adjustment disorder with depressed mood and his degenerative disc disease constituted severe impairments. As mentioned above, I must uphold the ALJ's findings if they are supported by substantial evidence and were reached through correct legal standards. Hancock v. Astrue, 667 F.3d 470 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." Id. (internal citations and quotations omitted). And in accordance with this standard, "[I] do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id.

---

[2] D.O.T. is shorthand for "Dictionary of Occupational Titles."

"Step [t]wo of the disability evaluation process is a threshold determination of whether a claimant is suffering from a severe impairment or combination of impairments." Stitely v. Comm'r, Soc. Sec. Admin., No. SAG-14-144, 2014 WL 5834700, at *3 (D. Md. Nov. 10, 2014). In order to satisfy this step, the alleged impairment must: "(1) be severe—cause a significant limitation to the claimant's ability to do basic work activities, (2) be medically determinable, and (3) meet the durational requirement—have lasted or be expected to last for 12 months." Id. (internal citations omitted). If the claimant satisfies this step for at least one of his impairments, then the evidence for all of his alleged impairments—whether they are found to be severe or not—are considered throughout the remainder of the disability determination process. 20 C.F.R. § 404.1523.[3]

Here, there is substantial evidence supporting the ALJ's determination that Mr. Lowe's adjustment disorder with depressed mood was not a severe impairment. By Mr. Lowe's own admission, he had never been diagnosed with a mental disorder, and the record is devoid of any evidence that he had been treated with a mental disorder. (Tr. 16, 367-368). Additionally, the ALJ noted the January 2013 consultative examination with Dr. Langlieb, during which Mr. Lowe appeared well-groomed, alert and cooperative, maintained good eye contact and displayed a cordial effect, good insight and intact judgment. (Tr. 367-370). The ALJ also noted that Mr. Lowe scored a 21/25 on the MMSE, which tests cognitive ability, memory, writing and reading ability and the ability to follow instructions, as well as Dr. Boateng's treatment notes, indicating that Mr. Lowe consistently displayed a stable psychiatric state. (Tr. 16).

Additionally, the ALJ assessed Mr. Lowe's mental impairment using the required "special technique" as set forth in 20 C.F.R. §§ 404.1520a, 416.920a. In doing so, the ALJ provided a detailed analysis, with citations to the record, supporting her findings of "mild" for the first three functional categories and no episodes for decompensation. (Tr. 16-18). The ALJ not only took into account Mr. Lowe's own statements, but she expressly considered and rejected the psychiatric reviews prepared by the state agency consultants. (Tr. 16). The ALJ explained that those opinions were given little weight because of the absence of any mental health treatment, medications, and diagnosis, and also because Mr. Lowe did not testify that his daily living was at all limited because of his mental impairment, Mr. Lowe displayed considerable social interaction with friends and strangers, and Mr. Lowe had shown signs of alertness, good insight and intact judgment. (Tr. 17).

---

[3] It is worth noting that regardless of whether the ALJ erred in finding that these impairments were non-severe, at least one of Mr. Lowe's impairments was determined to be severe and thus the analysis proceeded to the remainder of the sequential evaluation.

There is also substantial evidence supporting the ALJ's determination that Mr. Lowe's lumbar degenerative disc disease was non-severe. The ALJ noted the examinations from Doctors Boateng (January and August 214) and Gariwala (April 2014), which revealed no edema, considerable muscle strength, and good range of motion, and normal gait without the use of a hand held device. (Tr. 15, 530-532). Further, the ALJ pointed to the results of a February 2014 MRI, showing only mild disc bulges with no signs of herniation, central stenosis, or neural foraminal, and the fact that Mr. Lowe had not undergone physical therapy or received any injections for his alleged pain and related limitations. (Tr. 15-16).[4]

Lastly, Mr. Lowe claims that the ALJ never discussed the effects of his numerous pain medications on his ability to work. Although the ALJ did, in fact, discuss and consider Mr. Lowe's use of Lyrica (pain medication) and Metformin (diabetes medication), she admittedly did not mention Mr. Lowe's use of Hydrocodone and Tylenol 3. Nonetheless, in light of the evidence discussed above, the Court will not disturb the ALJ's conclusion that Mr. Lowe's treatment notes and record of daily activities and functioning are inconsistent with any significant limitation caused by his pain or its related management with medication.

II.    ALJ's Assessment of Mr. Lowe's Functional Limitations and Use of VE's
       Testimony and Hypothetical

Mr. Lowe contends that the ALJ erred by not finding sufficient visual limitations in the RFC, and in turn providing the VE with an incomplete hypothetical question, because, he argues, the record shows that he had limitations in both eyes. He also suggests that the VE's testimony was inconsistent with the DOT and thus should not have been used. The Court does not agree.

A "vocational expert's testimony must be based on a consideration of the entire record and must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." Burkhart v. Comm'r of Soc. Sec., No. CIV. A. H-98-1725, 1999 WL 33136051, at *12 (D. Md. July 14, 1999) (internal citations omitted). However, an ALJ "has great latitude in posing hypothetical questions," Koonce v. Apfel, 166 F.3d 1209 (4th Cir. 1999) (internal citations omitted), and "[t]he determination of whether a hypothetical fairly sets out all of a claimant's impairments turns on two issues: (1)

---

[4] Even if the ALJ failed to consider Mr. Lowe's use of a cane/hand held device, as he alleges in his fourth argument, such an omission would be of little consequence because, as explained above, the ALJ's ultimate determination of severity is supported by substantial evidence.

whether substantial evidence supports the ALJ's RFC determination; and (2) whether the hypothetical question adequately sets forth the RFC as found by the ALJ." Blackstone v. Astrue, No. CIV. SKG-12-2776, 2014 WL 253538, at *3 (D. Md. Jan. 17, 2014) (citations omitted).

At step two, the ALJ found that Mr. Lowe's suffered from left-eye blindness, and though this impairment was found to be severe under the regulations, the ALJ concluded that it did not meet Listings 2.02 ("Impairment of Visual Acuity), 2.03 (Contraction of the Visual Field), or 2.04 (Loss of Visual Efficiency). The ALJ nonetheless went onto account for this eye impairment in Mr. Lowe's RFC, stating that Mr. Lowe could "perform a full range of work at all exertional levels, but with the following nonexertional limitations: limited to jobs allowing monocular vision…". In making this finding, the ALJ considered Mr. Lowe's testimony that he does not wear corrective lenses in his right eye, that he denied any vision problems associated with his right eye, and that his vision acuity in his right eye remained intact. (Tr. 21). Subsequently, the ALJ asked the VE whether a hypothetical claimant could perform Mr. Lowe's past work, assuming that that hypothetical claimant had the same educational and employment background as Mr. Lowe, and that the hypothetical claimant would be limited, among other things, to "jobs allowing monocular vision." (Tr. 54). To which, the VE responded, in part, that the hypothetical claimant could perform security guard work as well as laborer/stock clerk. (Tr. 54-55)

The Court finds that the ALJ's RFC is supported by substantial evidence, and that this hypothetical was appropriate given the limitations found by the ALJ during her assessment of Mr. Lowe's RFC. The Court also finds no error with the VE's testimony in response to the hypothetical. The ALJ expressly asked whether the jobs that VE explained the hypothetical claimant could perform were consistent with the DOT, to which the VE responded that monocular vision is not discussed in the DOT but her assessment is based on her extensive experience and work in "job placement" and in rehabilitation counseling. (Tr. 24, 55). The VE testified based on her own background and expertise, which Mr. Lowe does not challenge, and that testimony was not inconsistent with either the work of security guard (D.O.T. #372.667-038) or laborer/stock clerk (D.O.T. #922.687.058).

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 16) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED. The Commissioner's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge